BRYANT, District Judge.
This is a suit brought by Adolphus Busch, August A. Busch, and E. Fause, copartners under the name of August Busch & Co., citizens of the state of Missouri, against G. P. Webb, B. R. Long, James Moreland, O. B. Fisher, and W. J. Rich, all of whom are residents of Grayson county, Tex., and citizens of the state of Texas. The bill alleges that G. P. Webb is county judge of Grayson county, Tex., and as such was ex officio a member of said commissioners’ court, and that all of said members together constituted said commissioners’ court. It further alleges that on the 8th day of February, 1903, a petition was filed before said commissioners’ court, signed by more than 250 names, asking them to order *657 an election to be held by the qualified voters of Grayson county to determine whether or not the sale of intoxicating liquors should be prohibited therein. Thát, acting upon said petition, said commissioners entered a decree ordering an election for said purpose to be held in said county on the 7th day of March, 1903. That in compliance with said order, on the 7th day of March, 1903, said election was held, and the returns of the judges of said election have been-returned to said commissioners’ court. That said court convened on the 18th day of March for the purpose of declaring the result of said election, and declared the result of said election to be in favor of prohibition, and immediately made an order absolutely prohibiting the sale of intoxicating liquors in Grayson county, except for the purposes and under the regulations specified in title 69 of the Revised Statutes of 1895 of the state of Texas, and the order so made will, under the laws of the state of Texas, be held to be prima facie evidence that all of the provisions of the law, in giving notice of and in holding said election, and in counting and returning the votes, and declaring the result thereof, have been complied with.
The complainants further allege that title 69 of the Revised Statutes of 1895 of the state of Texas, including articles 3384 and 3385 of said Revised Statutes, and articles 403 and 405 of the Penal Code of 1895 of the state of Texas, purporting to prescribe the penalty against any person who shall sell intoxicating liquors in any county, justice precinct, town, or city in which the sale of intoxicating liquors has been prohibited, and the exceptions under which said sales may be made, all of which are known as the “Local Option Law” of the state of Texas, is unconstitutional, invalid, null, and void, in that such enactments of the Legislature of the state of Texas contravene the provisions of the fourteenth amendment of the Constitution of the United States of America in the following particulars: 'That is to say, that article 3385 of the Revised Statutes of the state of Texas abridges the privileges and immunities of the citizens of the state of Texas and of the United States,- in contravention of the provisions of the Constitution of the United States of America in that respect, in this: that said provisions provide that the preceding articles of the local option law shall not be so construed as to prohibit the sale of alcoholic stimulants as medicines in case of actual sickness, but such stimulants shall only be sold upon the written prescription of a regular practicing physician, dated and signed by him, and certified on his honor that he, the physician, has -personally examined the applicant, naming him, and that he found him actually sick and in need of the stimulant prescribed as medicine; provided that a physician who does not follow the profession of medicine as his principal and usual calling shall not be authorized to give the prescription provided for in this article. That article 403 of the Penal Code of 1895 of the state of Texas abridges the privileges and immunities of citizens of the state of Texas and of the United States, in contravention of the provisions of the Constitution of the United States of America in that respect, in this: that said article provides that a physician who does not follow the profession of medicine as his principal and usual calling, or who is in any way directly or indirectly engaged in the *658 sale of such stimulants on his own account, or as the agent, employe, or partner of others, shall not be authorized to give the prescription provided for in this article. Also that article 405 of the Penal Code of 1895 of the state of Texas abridges the privileges and immunities of citizens of the state of Texas and of the United States, in contravention of the provisions of the Constitution of the United States of America, in this: that said article provides that if any practicing physician who is directly or indirectly, either for himself or as the agent or employé of another, interested in the sale of intoxicating liquors, shall give a prescription to be used in obtaining any intoxicating liquors in any such county, justice precinct, town, or city, he shall be punished by a fine of not less than $25 or more than $100, and by imprisonment in the county jail of not less than 20 or more than 60 days.
The petition then recites at great length that there are many physicians in the city of Denison who have business other than that of practicing medicine, and that by these provisions they would be abridged of their rights to practice their profession, and that such deprivation would not be in accordance with law, but contrary to the fourteenth amendment of the Constitution of the United States.
Complainants further allege that the entire local option law of the state of Texas,' including all the articles hereinbefore mentioned, is void upon the following grounds, and for the following reasons, to wit: Because article 3385 of the Revised Statutes of 1895 of the state of Texas abridges the privileges and immunities of the citizens of the state of Texas and of the United States, in contravention of the provisions of the Constitution of the United States of America in that respect, and because said article 3385 operates to deprive certain citizens of the United States, and especially these complainants, of their property without due process of law, in contravention of the Constitution of the United States of America in that respect; and 'because said article 3385 denies to many persons „within the jurisdiction of the state of Texas the equal protection of the law guarantied them by the Constitution of the United States; and because said local option statute, and especially said article 3385, constitutes class legislation within the meaning of the law, and is antagonistic to the essential principles of free republican government, in that, in contravention of the provisions of the Constitution of the United States with respect thereto, it discriminates in favor of certain persons holding certain views, and against other persons and citizens holding opposite views, upon questions of public policy and concern, in this: that under the said article 3385 the failure to carry prohibition in a county shall not prevent an election for the same from being immediately thereafter held in a justice precinct or subdivision of such county, as designated by the commissioners’ court, or in any town or city in such county; nor shall the failure to carry prohibition in a city or town prevent an election from being thereafter immediately held for the entire justice precinct or county in which said town or city is situated; but when prohibition has been carried at an election ordered for the entire county, no election upon the question of pro hibition shall thereafter be ordered for any justice precinct, town, *659 or city of said county until after prohibition has been defeated at a subsequent election for the same purpose ordered and held for the entire county in accordance with the provisions of this title.
Complainants further allege that said article 3385 is void because in contravention of the provisions of the Constitution of the United States relating thereto, in that it denies the equal protection to a large portion of the citizenship of the state, and it bestows exclusive privileges upon a large class of the citizenship of the state, which exclusive privileges are not in consideration of services rendered, in this: that it gives to those citizens of the state who are in favor of prohibiting the sale of intoxicating liquors in the county and subdivision of the county such rights, and -it denies to the persons who are against prohibiting the sale of intoxicating liquors in the county the same privileges and rights.
They further allege that it discriminates against those who vote against prohibition, and in favor of those who vote for prohibition.
Complainants further allege that they are engaged in the wholesale beer business in the cities of Sherman and Denison, in Grayson county, Tex., and that the value of their business in said cities is the sum of $250,000. That if the commissioners’ court shall publish the result of the election held in Grayson county on March 7, 1903, the said business of complainants will be greatly damaged, if not entirely ruined.
The complainants further complain of the following order of the commissioners’ court of Grayson county, Tex., to wit:
“On this the 9th day of February, 1903, came on to be considered the petition of over two hundred and fifty qualified voters of Grayson county, Texas, for an election to determine whether or not the sale of intoxicating liquors shall be prohibited within said Grayson county, Texas, except for the purposes and under the regulations prescribed by law. And it appearing to the court that said petition is in due form, and has the required number of signers thereto, it is therefore ordered by this court that an election be held on March 7, 1903, between the hours of 8 a. m. and 6 p. m., at the regular voting places within said Grayson county, to determine whether or not the sale of intoxicating liquors shall be prohibited within said Grayson county, Texas, except for the purposes and under the regulations prescribed by law,” etc.
The complainants further allege that the question submitted to the voters of Grayson county was whether or not the sale of intoxicating liquor? should be prohibited within said Grayson county, except for the purposes and under the regulations prescribed by law, and claim that this order was void, because, under the Constitution of the state of Texas, the only question that could be submitted was whether or not the sale of intoxicating liquors should be absolutely prohibited.
The complainants pray that an injunction be granted enjoining and restraining the defendants from publishing the result of such election, and that said election be declared to be invalid, null, and void and of no effect, and that the proceedings with reference to said local option be set aside and held for naught.
There are many other allegations in the bill not necessary to be mentioned. It is believed that the foregoing is a substantial statement of the material allegations contained in the bill.
*660 W. M. Nagle has intervened in this case, and alleges that he is a graduate of a medical school, and has been a practicing physician in the city of Denison, Grayson county, Tex., for 21 years. That his principal and usual business at this time is acting as postmaster for the city of Denison, but that he has many patients whose regular physician he is, and for whom he prescribed. That it is impossible for him to efficiently carry on the practice of medicine without prescribing alcoholic stimulants in cases of actual sickness. Said Nagle alleges that the local option law, to wit, article 3385 of the Revised Statutes of the state of Texas, abridges the privileges and immunities of citizens of the city of Denison and state of Texas and United States, in contravention of the provisions of the Constitution of the United States of America in that respect, in this: that said article provides that the preceding articles of the local option law shall not be so construed to prohibit' the sale of alcoholic stimulants as medicine, but such stimulants shall only be sold upon the written prescription of a regular practicing physician, dated and signed by him, and certified on his honor that he, the physician, had personally examined the applicant, naming him, and that he found him actually sick and in need of the stimulant prescribed as medicine, provided that a physician who does not follow the profession of medicine as his principal and usual calling shall not be authorized to give the prescriptions provided for in this article. Said Nagle further alleges that he is in no wise interested in the whisky business.
The defendants have answered by demurrer: First! that the complainants’ remedy, if they have any, is at law, and not in equity. Second, that they seek to have the United States court stay proceedings in a court of the state of Texas by writ of injunction, which is not allowable. Third, that the commissioners’ court of Grayson county have declared the result of the election mentioned in said bill of complaint, and that such decision is final and conclusive against all questions of irregularities. Fourth, that the statutes mentioned in said bill of complaint do not violate the Constitution, as alleged by the complainants. There are other grounds of demurrer, which I do not deem it necessary to mention; but the- seventh ground of demurrer is that so much of said bill of complaint which alleges the unconstitutionality of those clauses of the statute prohibiting prescriptions of liquor by those who do not follow the profession of medicine as their principal and usual calling, or those interested in the sale of liquor, is insufficient, because the complainant has no interest in such questions except as a physician. That said provisions are commendable and wholesome police regulations, and that said clauses áre not interdependent with the other parts of the law, and, if they were invalid, the remainder of the law being valid, such fact would' constitute no sufficient ground for enjoining the proclamation of the result of the election.
After said demurrers, the defendants answer, not waiving their demurrers, and admit that the local option election mentioned in complainants’ bill was ordered by these defendants, and the result declared as stated; but they deny that there were any of the irregularities averred by the complainants. They substantially state that said election was valid and regular in all particulars.
*661 The complainants’ bill and the intervening petition of W. M. Nagle cover many pages, and are too voluminous to be set forth in detail, but, as before stated, these are the substantial issues joined between the litigants in this action.
' In brief, the complainants complain of the local option election in Grayson county, stating that they are engaged in the wholesale beer business in the cities of Denison and Sherman in Grayson county, 'Tex., and. that the value of their business in said cities is very great, to wit, the sum of $250,000, and that by the passage of this law their property is taken without due process of law. They further attack the legality of the order of the commissioners’ court in ordering a local option election, because they say the order embraced matters that it should not have embraced, in this: that it was an election to prohibit the sale of intoxicating liquors in Grayson county except for the purposes and under the regulations prescribed by law, claiming that the latter limitation rendered the election void, because it submitted to the voters a question not authorized by the constitutional amendment, that is, section 20, art. 16, of the said state Constitution. They also complain that the whole law is void because it discriminates in favor of one class of people who are in favor of prohibition, and against those who are against prohibition.
It is always a matter of great delicacy when federal courts are called upon to interfere with the local laws of the state, and I cannot express the idea so well as by quoting from the opinion of Chief Justice Marshall in the case of Cohens v. Virginia, 6 Wheat. 404, 5 L. Ed. 257. He says:
“It is most true that this court will not take jurisdiction if it should not, but it is equally true that it must take jurisdiction if it should. The judiciary cannot, as the Legislature may, avoid a measure because it approaches the confines of the Constitution. We cannot pass it by because it is doubtful. With whatever • doubts, with whatever difficulties, a case may be attended, we must decide it if it be brought before us. We have no more right to decline the exercise of jurisdiction which is given than to usurp that which is not given. The one or the other would be treason to the Constitution. Questions may occur which we would gladly avoid, but we cannot avoid them. All we can do is to exercise our best judgment, and conscientiously perform our duty. In doing this on the present occasion we find this tribunal invested with appellate jurisdiction in all cases arising under the Constitution and laws of the United States. We find no exception to this grant, and we cannot insert one.”
Appreciating fully the importance of this question, and also the delicacy of passing upon it when applied to by parties entitled to so apply, I have no duty left but to decide the questions presented.
It may not be improper to deal in some generalities which it would be well to bear in mind in passing upon this and all similar questions. There is of necessity no conflict between federal and state authority when properly understood and properly exercised. It is a matter of familiar law that the Constitution of the United States, the laws passed within its limitations, and treaties made in pursuance thereof, constitute the supreme law of the land; that is, it is the paramount law which is 'binding upon every state in this Union, every court, and every citizen. While this is true, it is equally true that each state, in the administration of its local self-government, is absolutely free *662 to pass any and all laws it may deem proper for the government of its citizens, provided only that it does not violate the Constitution of the United States, or some act of Congress passed in pursuance thereof, or some treaty made thereunder. I do not mean that the citizen may not have relief from an unconstitutional state law, but I mean that, so far as federal courts are concerned, they will not intervene, except where some right is asserted and claimed by virtue of the Constitution of the United States, or the laws thereof, and that the same is being infringed by state legislation. Where such claim is made, the duty of the federal courts is not optional, but imperative, and the claim must be heard and decided as any other claim which is asserted. I deem this much proper as defining the positions of the two sovereignties, one that is supreme upon certain subjects, and the other supreme so long as it does not infringe upon the prerogatives of the greater. Bearing these matters in mind, we will proceed to consider the contention of the complainants in this case.
The prohibition law of Texas is founded upon section 20, art. 16, of the Constitution of the state of Texas, which reads as follows:
“The Legislature shall at Its first session enact a law whereby the qualified voters of any county, justice’s precinct, town, city or such sub-division of a county as may be designated by the commissioners’ court of such county, may by a majority vote determine from time to time whether the sale of intoxicating liquors shall be prohibited within the prescribed limits.”
It will be noted that the election complained of was for the entire county. Previous to this amendment to the Constitution of the state of Texas, where the Legislature had directly undertaken to give the right to certain localities to pass . upon the question of whether or not intoxicating liquors should be sold by a vote of the qualified voters of such locality, the courts have held, without exception, in this state, that this was a delegation of legislative authority, and consequently was void upon the ground that the Legislature had no authority, without the aid of a constitutional amendment, to delegate to the voters the right to legislate for them, and, in consequence of that line of decisions, the constitutional amendment above referred to was adopted. Upon a close analysis of the constitutional amendment, it will be observed that the only question delegated by the Legislature, and authorized by the constitutional amendment to be delegated to the voters of localities, was whether the sale of intoxicating liquors shall be prohibited within the prescribed limits, and, in fact, section 20 reserves to the Legislature the right and the duty to enact a law whereby the exercise of this privilege could be asserted by the qualified voters.
The order of the commissioners’ court, as stated by complainants, orders an election to be held in Grayson county for the purpose of prohibiting the sale of intoxicating liquors, and also adds, “except for the purposes and under the regulations prescribed by law.” The complainants contend that this order is invalid, because it attaches another and different question to the one authorized by the Constitution to be submitted to the qualified voters. In other words, the complainants’ contention is that, under the Constitution the sole question, that could be submitted to the qualified voters was whether *663 or not the sale of intoxicating liquors should be, prohibited. At first glance this question seems to be one of merit, but upon a close examination thereof I do not think it is tenable. The power granted in the Constitution was exclusive. It embraced the power to prohibit absolutely the sale of intoxicating liquors, and I do not think that the exercise of less power than that given would nullify the act. It is true that in Texas, where elections have been ordered to prohibit the sale or giving away or exchange of spirituous liquors, the courts have held the order void, because greater power was embraced in the order of election than that conferred by the Constitution. But can it be true that, because it is void when you undertake to exercise greater authority than you have, it must follow that your action is void when you exercise less power than you have? However this question might be decided as an original question, it has been before the criminal court of this state in the following cases: Bowman v. State, 40 S. W. 796; Sparks v. State, 45 S. W. 493; McLain v. State, 64 S. W. 865. In the case of Bowman v. State, above referred to, Judge Henderson, rendering the opinion of the court, among other things, said:
“Concede, however, that the'constitutional question as here presented, that is that the act of the Legislature authorizing a submission of the question of local option to be voted on by counties, precincts, etc., authorized them to vote, not a total prohibition, but a partial prohibition (that is, that the real question voted on by the people of the precinct in question was, as claimed by appellant, to prohibit the sale of intoxicating liquors, etc., save and except for medical and sacramental purposes), then let us see how the matter stands. The contention of appellant, as we understand it, is that the Legislature, under the Constitution, had only the power to submit the question of the total prohibition of all sales of intoxicating liquor within the local option district, and that when they submitted the question of prohibition the proviso in favor of the sale of intoxicants for medical purposes and wines for sacramental purposes was beyond their power, and rendered the whole law null and void. In our opinion, such an act would not be violative of said constitutional provision. It is a familiar rule of construction, applicable alike to statutes and constitutions, that all laws are to be construed with reference to the existing evils to be remedied. In passing the constitutional provision in question, there was no existing evil in a sale of intoxicants as medicines or for sacramental purposes. By reference to the history of those times, it will be seen that' the restriction and the abolition of saloons was the subject aimed at. Drunkenness and its attendant evils were abroad in the land. This was caused by the liquor traffic. ‘Where the meaning of a statute (we interpolate ‘or Constitution’) is not plain, a court is warranted in availing itself of all legitimate aids to ascertain the true intention, and among them are some extraneous facts. The object sought to be accomplished exercises a potent influence in determining the meaning of not only the principal, but also the minor, provisions of a statute. To ascertain it fully, the court will be greatly assisted by knowing, and it is permitted to consider, the mischief to be removed or suppressed, or the necessity of any kind which induced the enactment.’ Suth. St. Const. § 292, and authorities there cited. And so we have in the construction of powers as follows: ‘Such an interpretation must be given to the instrument as to carry out the substantial intention of the party creating the power, not restraining or lessening it by narrow and rigid construction, nor by a loose and extended interpretation dispensing with the substance of what was to be performed.’ 18 Am. & Eng. Enc. Law, p. 895, note 2. Now, we take it, in adopting the provisions of the Constitution in question, the people intended to prohibit the liquor traffic, and, because the language used is general and comprehensive, it was not intended to put a limitation upon the Legislature to authorize the sale or disposition *664 of liquor for purposes that were necessary and not harmful. When our people adopted this constitutional amendment, we were not unmindful that this was a Christian country, in which the orthodox religion was the basis and substrata of our civilization, and to be considered pari materia with this provision of our Constitution they had in view, section 6 of the Bill of Bights, which, among other things, provides: ‘All men have the natural and indefeasible right to worship Almighty God according to the dictates of their own consciences,’ etc., and further provides: ‘And no human authority ought in any case whatever to control or interfere with the rights of conscience in the matter of religion, and no preference shall be given by law to any religious society or mode of worship.’ It was not proposed to abolish the sacrament, which is one of the fundamental ceremonies of our religion, which idea would be involved in the construction sought—that wines could not be bought or sold for sacramental purposes. It was further known at the time that alcohol in various forms was in common use among the people, in case of sickness, for medical purposes; alcohol in various forms entering into combination with .many of the' most useful medicines belonging to the profession. These were not evils to be provided against, but privileges to be conserved, and it is not inimical to a proper construction of the provisions of the Constitution in question to interpret it in the light of the surrounding circumstances under which it was adopted. In making it a part of the fundamental law, the people sought to circumscribe the liquor traffic! and to place it within the power of communities to adopt laws for this purpose, and it is in keeping with the spirit of this enactment to authorize communities to abolish the sale of intoxicants for all purposes except those deemed essential to the health and moral well-being of society. This is not a question of ultra vires (that is, that the Legislature has exercised more authority than that conferred upon it by the Constitution), but the contention is that they have exercised less. In our judgment the greater includes the less, and in this instance the law is not rendered void as being unconstitutional because the Legislature may have seen fit to ingraft on the law, after it has been adopted by the communities, the exception enumerated.”
In the subsequent cases, wherever the question arose, the decision above referred to was quoted as determinative of the question involved, and it is unnecessary to repeat what was said in subsequent cases, as they were in line with the above. This is a judicial interpretation of the Constitution of the state of Texas, and the power of the commissioners’ court in ordering the election, and the power oi the Legislature to attach the exceptions, and is binding upon this court for the reason that no federal question is involved, and for that, if for no other reason, would constrain this court to follow the same. It appears to me that this line of authority disposes of the complainants’ contention as to the alleged illegality of the order of the commissioners’ court ordering the election in this county.
It is well to bear in mind the fact that this government is composed of three branches, the executive, legislative and judicial, and it is the duty of each not to trench upon the authority of the other, but, on the contrary, it is the duty of each department to guard with zealous care that no intrenchment should occur. As to the wisdom of a law, that is for the legislative department. As to whether it is a valid law is for the judicial, and therefore the courts will only look to see if the legislative department, in the exercise of its function, has kept within the confines of the Constitution of the state where the law may be passed, and within the confines of the Constitution of the United States. The right to sell intoxicating liquors is, and has always been, in this country, the subject of license and control.
*665 It has never been a matter of right, such as a man’s right to be a farmer, to own a horse, and things of that character, but has always been upon conditions. The decisions established the doctrine beyond question that each and every state has the right, not only to prohibit the sale of intoxicating liquors, but they have the right to prohibit the manufacture of them. As to the wisdom of doing one or both, that is a matter left entirely to the legislative department, provided only that in so doing they have not infringed any right that the party may have by reason of the federal Constitution or the laws thereunder.
In the case of Mugler v. Kansas, 123 U. S. 623, 8 Sup. Ct. 273, 31 L. Ed. 205, in which Mugler was the owner of a brewery, and the prohibitory law of the state had prohibited not only the sale of spirituous liquors, but had also prohibited their manufacture, and in which the evidence established that his brewery was worthless except for the purpose of manufacturing beer, the Supreme Court of the United States held that, while it did affect the value of Mugler’s property, it was not in violation of the Constitution or laws of the United States in any particular whatever. Iin the present case the complainants, Busch & Co., complain that they have a business that would be injuriously affected by the promulgation of this law, and that thereby their property is being affected or destroyed without due process of law. Much stronger was the Mugler Case, where the property was rendered worthless, it being a brewing establishment, yet the Supreme Court of the United States held that it was not the taking of property without due process of law as meant by the Constitution of the United States and the fourteenth amendment thereto. Busch & Co., being nonresidents, can only complain of such things as would be violative of the Constitution and laws of the United States, and all other matters complained of by them are matters upon which they cannot be heard in this court. By that is meant irregularities in elections, if such exist, improper conduct of judges of elections, if any exist, the effect upon physicians and their rights, and the "question of whether or not it was valid for the Legislature to allow prohibitionists to order elections, and refuse the right to anti-prohibitionists, they being questions with which said complainants have no concern.
The contention of the defendants that the commissioners’ court of Grayson county is a court within the meaning of the law, and that their action cannot be restrained by an injunction, as contemplated by section 720 of the Statutes of the United. States [U. S. Comp. St. 1901, p. 581], to my mind, is without merit. The duty of said ■body to declare the result of said election and to publish such result is purely ministerial, and in no wise judicial. It is true that many duties of a court proper are ministerial, but they are clothed with judicial functions, such as deciding litigated questions between litigants, etc. The commissioners’ court is not a court, in my opinion, within the meaning of said article 720 of the Revised Statutes, and therefore this contention cannot be sustained.
The contention of defendants that the remedy of complainants is at law, and not in equity, I think is clearly untenable.
*666 The third contention of defendants, that, the commissioners’ court of Grayson county having declared the result of the election mentioned in the bill of complaint, such decision is final and conclusive against all questions of irregularity, is sound law as a proposition, but not material in this case.
I deem it necessary, in view of the conclusion at which I have arrived, to notice closely only the seventh ground of demurrer of the defendants, which is that—
"So much of said bill of complaint as alleges the uneonstitutionality of those clauses of the statute prohibiting prescriptions of liquor by those who do not follow the profession of medicine as their principal and usual calling, or those interested in the sale of liquor, is insufficient, because the complainants-have no interest in such questions; that said provisions are commendable and wholesome police regulations, and said clauses are not interdependent with the other parts of the law, and, even if they were invalid, the remainder of the law being valid, such fact would constitute no sufficient ground for enjoining the proclamation of the result of the election.”
Section 3385 of the Revised Statutes of the state of Texas reads-as follows:
“The preceding article shall not be so construed as to prohibit the sale of wines for sacramental purposes, nor alcoholic stimulants as medicines in cases-of actual sickness, but such stimulant shall only be sold upon the written prescription of a regular practicing physician, dated and signed by him, and. certified on his honor that he, the physician, has personally examined the applicant, naming him, and that he finds him actually sick and in need of the-stimulant prescribed as medicine; provided that a physician who does not follow the profession of medicine as his principal and usual calling shall not ■be authorized to give the prescription provided for in this article; and provided further, that no person shall be permitted to sell more than once on the-same prescription, nor shall any person be permitted to sell at all od the-prescription of a physician not herein authorized to give it, nor on a prescription which is not dated, signed and certified as above required; provided, that: every person selling such stimulants upon the prescription herein provided, for, shall cancel such prescription by endorsing thereon the word ‘cancelled’' and file the same away.”
Article 14, § 1, of the Constitution of the United States, reads as-follows:
“All persons born or naturalized in the United States, and subject to the-jurisdiction thereof, are citizens of the United States and of the state wherein they reside. No state shall make or enforce any law which shall abridge the-privileges or immunities of citizens of the United States. Nor shall any state deprive any person of life, liberty or property without due process of law, nor-deny to any person within its jurisdiction the equal protection of the laws.”
The first portion of this article defines who are citizens of the United States, which includes all persons born or naturalized in the-United States, who constitute the class of persons to whom the protection of this article is éxtended, and declares all such persons to be citizens of the United States, in whatever state they may reside. It prohibits any state to make or enforce any law which abridges the privileges or immunities of citizens of the United States, or that deprives any person of life, liberty, or property without due process of.’ law, or denies to any person within its jurisdiction the equal protection of the laws.
The plaintiff, W. M. Nagle, alleges, in substance, that he is a graduate of a medical school, has practiced medicine for 21 years, is a: *667 citizen of the United States, and is entitled to the benefits conferred by the fourteenth amendment above recited. He further says that he is in no wise engaged in the whisky business, and has no interest therein. He states that his principal business is that of postmaster in the city of Denison, Grayson county, Tex., but that he still practices his profession, and that in such practice certain diseases require the use of alcoholic stimulants, and that, by the provisions of section 3385 of the Revised Statutes of Texas, his right to practice his profession is abolished.
The defendants’ demurrer admits the truth of Nagle’s statements in his petition. It is thereby admitted that said Nagle is a graduate of a medical school; that he is a practicing physician in Grayson county; that he is postmaster at Denison, Tex., which constitutes his main business, but that he is still practicing his profession as. a physician, and that in such practice, in some cases, it is necessary that his patients should be supplied with alcoholic stimulants.
Can a state take away from a physician his right to practice his profession because he has some other business than that of medicine ? This is the question to be determined. I recognize the right of the Legislature to classify physicians, provided the classification is based upon sound public policy, and is a reasonable classification. To illustrate : It would be competent for the Legislature to say that no physician who has been convicted of a crime should be allowed to practice his profession, or to pass any other reasonable regulation, although, apparently, it might discriminate against persons in the same class or profession. But I apprehend that, wherever such classification is made, it must be made upon the ground of public policy, and for a reason that would attach to the party thus excluded either moral turpitude or incompetency. Where such classification is attempted, and for such reasons, the court will uphold it. But is it true that the Legislature can arbitrarily deprive any citizen of his right to pursue his chosen profession, and to its fullest extent, where the discrimination is made solely because he is engaged in some other lawful business which in no wise attaches to him unfitness to practice his profession, or moral turpitude ? The physician’s calling is one that requires long preparation, and scientific information not possessed by people generally, entailing upon him much expense and years of close study to qualify himself to properly perform his duties as a physician. His calling is of that nature, being one of confidence. He obtains the secrets of his patients as to physical ailments, of whatever character they may be, and therefore the Legislature has the power, upon grounds of public policy, to guard strenuously the individuals that are allowed to practice medicine, and they have the right to classify and discriminate for good cause, but that does not carry with it the power of arbitrarily discriminating against any member of the medical profession, unless, as so often stated, it is for incompetency or moral turpitude, which public policy requires should be enforced.
Speaking upon the question of classification, in Cotting v. Stock Yards Co., 183 U. S. 79, 22 Sup. Ct. 30, 46 L. Ed. 92, the Supreme *668 Court of the United States discusses the subject very thoroughly Mr. Justice Brewer says:
“But while recognizing to tlie full extent the impossibility of an imposition of duties and obligations mathematically equal upon all, and also recognizing the right of classification of industries and occupations, we must nevertheless always remember that the equal protection of the law is guarantied, and that such equal protection is denied when upon one of two parties engaged in the same kind of business, and under the same conditions, burdens are cast which are not cast upon the other. There can be no pretense that the stockyard which receives 99 head of cattle per day a year does precisely the same business as one receiving 101 head of cattle per day each year. It is the same business in all its essential elements, and the only difference is that one does more business than the other; but the receipt of an extra two head of cattle per day does not change the character of the business. If once the door is opened to the affirmance of the proposition that the state may regulate one who does much business, but not regulating another who does some, but less, business, then all significance in the guaranty of the equal protection of the law is lost, and the door is opened to that inequality of legislation which Mr. Justice Catron refers to in the quotation above made. This statute is not simply legislation which in its indirect results affects different individuals or corporations differently, nor in those in which a classification is based upon inherent differences in the character of the business; but is a positive and direct discrimination between persons engaged in the same class of business, and based simply upon the quantity of business which each may do. If such legislation does not deny the equal protection of the law, we are unable to perceive what legislation would. We think, therefore, that the statute must be held unconstitutional, as in conflict with the equal protection clause of the 14th amendment.”
In the Connelly Case, 184 U. S. 540, 22 Sup. Ct. 431, 46 L. Ed. 679, the court says:
“That no impediment should be interposed to the pursuits of any one, except as applied to the same pursuits by others under like circumstances; that no greater burdens should be laid upon one than are laid upon others in the same class and condition; and that in the administration of criminal justice no different or higher punishment should be imposed upon one than such as is prescribed to all for like offense.”
It appears to me, upon authority and upon reason, that the contention of Nagle is correct, and that the statute bearing upon that subject is unconstitutional and void for the reasons above stated. By this I mean that the following portion of article 3385 is invalid:
“Provided, that a physician who does not follow the profession of medicine as his principal and usual calling shall not be authorized to give the prescription provided for in this article.”
This portion of article 3385, as stated, in my opinion, is unconstitutional and void, as applied to the facts presented by Nagle, and this court so holds.
The question, then, is, what effect does this holding have upon the local option law? I do not think that it in any wise affects the validity of the law, except in so far as stated, and that that portion can be held to be illegal and the rest of the statute sustained as a valid law, and, so feeling, such is the ruling in this case.
No person is before me claiming to be in the liquor business and also a practicing physician. Upon that subject I express no opinion, and am not to be understood as expressing any opinion, because the question is not before me for determination. My view is that if *669 there was a provision that nullified the entire law, although not directly involved by the party presenting the application for relief, the court might consider it; but where it is a provision that can be stricken out, and yet the law sustained as a valid law in all other respects, I do not think the court should volunteer to enter upon that question.
The only other matter I think necessary to refer to is the contention of the complainants that the law is invalid because prohibitionists are allowed to submit the question in localities for the vote of the people, and the anti-prohibitionists are not so allowed. If should be borne in mind that the right to deal in alcoholic stimulants is not an immunity or privilege secured to any citizen by the fourteenth amendment to the Constitution of the United States, or by any other law. It is also equally true that every state has the right to prescribe how such articles may be sold, and the further right to decide that they shall not be sold at all if the legislative wisdom deems this for the best interests of the public. It does not discriminate against the members of a class, but it refuses to the .entire class the right to pursue that occupation, and because the Legislature does not confer upon that class, and upon those entertaining anti-prohibition views, the right to resubmit the question to a vote of the people until the expiration of two years, is not violative of any principle of law with which I am familiar, and consequently I do not think the contention of the complainants well founded upon that question.
The relief sought in this case is to enjoin the commissioners’ court from publishing the result of the prohibition election held in this county on the 7th of March, 1903. Such publication is purely a ministerial act, and the defendants are in no wise enforcing said law, but simply announcing the result of said election.
Therefore the judgment in this case will be the setting aside of the temporary order heretofore granted, and denying to the complainants the relief sought.

 2. See Constitutional Law, vol. 10, Cent. Dig. § 841.